## LEAGUE v. GEISELMAN. (No. 825.)

(Court of Civil Appeals of Texas. Beaumont. May 16, 1922.)

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by M. P. Geiselman against Mrs. Nellie B. League, executrix. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 152 S. W. 1182.

Stewarts and R. W. Houk, all of Houston, for appellant.

Baker, Botts, Parker & Garwood, of Houston, for appellee.

WALKER, J. This was a boundary suit in its simplest form, with appellee as plaintiff and appellant as defendant. The trial was to a jury, and on conclusion of appellee's evidence appellant offered no evidence, but moved for an instructed verdict. This instruction was refused, and the case submitted to the jury on special issues. The verdict of the jury was in favor of appellee, and on the verdict the trial court entered judgment against appellant and in favor of appellee for the land in controversy. Appellant complains of the refusal of the instructed verdict and of the admission of certain testimony.

The O. Smith survey is situated in Harris county, immediately south of the John Austin. The southwestern corner of the A. C. McReynolds lies immediately west of the Southern portion of the John Austin and the O. Smith. The west boundary line of the O. Smith is a common line with the east boundary line of the McReynolds. The McReynolds is a senior survey. In 1848, Mr. Jacob Rothhaas subdivided the O. Smith, making a map and plat of his work, which was duly recorded. On this map big lots 1, 2, 3, and 4 form a consecutive tier of lots on the west side of the Smith, beginning at the southwest corner of that survey, having their west line coincident with the west line of the original survey. Each of these lots was 1,000 varas wide, extending from the west boundary line. Immediately east of lots 1, 2, 3, and 4 were lots 5, 6, and 7, lots 1 and 2 being west of lot 5, and the northeast corner of 1 and the southeast corner of 2, being a common corner, were on the west boundary line of lot 5. The north

boundary line of lot 2, beginning on the west boundary line, extended east, forming the north boundary line of lot 5 and the south boundary line of lot 6. The north boundary line of lot 3, beginning on the orig- inal west boundary line, extended east form- ing the north boundary line of lot 6, and the south boundary line of lot 7. The north boundary line of lot 4, beginning on the original west boundary line, extended east, forming the north boundary line of lot 7. Lots 5, 6, and 7 were each 1,000 varas wide. Lot 3 was of the same width as lot 6, hav- ing a common dividing line. Lot 7 was the same width as lot 4, having a common divid- ing line, and lots 1 and 2, together, were of the same width as lot 5, having a common dividing line. Lot 11 was immediately east of lot 7, and of the same width. The south- west corner of lot 11 was a common corner with the southeast corner of lot 7 and the northeast corner of lot 6. This corner is designated in this record as the Bagby cor- ner.

Prior to 1860, the owners of Smith sold lot 5. In 1860 the district court of Harris county entered an order partitioning the unsold portions of the Smith. Under or- der of the court, Will Powers, subdivided the unsold portions of the Smith, making a map and plat of his work, with the field notes of each subdivision. This map and plat is dated November 5, 1860. A comparison of his map of 1860 with the Rothhaas of 1848 shows very little, if any, difference. As to the lots above mentioned, we see no differ- ence. Powers gave the field notes of lot No. 1 of his subdivision as follows:

"Lot No. 1 begins at a stake in the prairie S. W. from Thos. Elsbury's residence, it being also the S. W. cor. of the original survey for O. Smith; thence N. 1,060 varas, crossing a small branch at 390, to a stake on the W. line of said Smith survey; thence E. 1,000 vrs. to a stake on W. line of lot No 5.; thence S. 625 varas, to a stake on S. line of O. Smith survey: thence S. 66 deg. 1,088 varas to the place of beginning, crossing a small branch at 700 varas, containing within said area 146 acres, be the same more or less."

And lot No. 2 of his subdivision as follows:

"Lot No. 2 begins at the N. E. cor. of lot No. 1; thence W. 1,000 varas, to W. line of said O. Smith survey; thence N. 564½ varas, along said line to the S. W. cor. of lot No. 3; thence E. 1,000 varas, to the N. W. cor. of lot No. 5; thence S. 564½ varas to the place of beginning, containing within said area 100 acres, be the same more or less."

In 1866, T. B. J. Hadley owned big blocks 5 and 6, and on that date had these two lots subdivided into small lots 1, 2, 3, 4, and 5. Map and plat of this subdivision was made by W. E. Wood, a civil engineer, which plat was recorded. On this plat the north- east corner of lot 6 is marked as the Bag- by corner. This corner has been known and recognized universally and by every one since 1863. On the maps both of Rothhaas and Powers the dividing line between lots 1, 2, 3, and 4 on the west, and 5, 6, and 7 on the east, is a straight line running north from the southeast corner of 1 and the south- west corner of 5. On the Woods map, the west boundary line of lots 5 and 6 is shown as a straight line running north from the southwest corner of lot 5. The issue in this case is the true location of the dividing line between big lot 2 and big lot 5. Thus the line in controversy is a segment of the straight line extending north from the south- west corner of 5 and the southeast corner of 1.

The issues of fact and law in this case are the same as in League v. William M. Rice In- stitute (Tex. Civ. App.) 152 S. W. 1182. The same party was appellant in both cases, rep- resented by the same firm of lawyers. The appellees were different, but were repre- sented by the same firm of lawyers. The is- sue was the same; that is, the location of a segment of the dividing line between the tier of lots 1, 2, 3, and 4, on the west, and 5, 6, and 7, on the east.

Appellant made the same contention, based on the same propositions, in the first case as in this. In that case, Mr. Justice Higgins made a very careful analysis of the facts, giving a very full statement from the rec- ord, all of which appears in this record. He also analyzed and stated the contentions of both parties as to the location of the bounda- ry line, which, as we have said, are the same in this case. In the first case, the conten- tion was as to the location of the line be- tween lot 3, on the west, and 6, on the east. His conclusions sustaining the judgment of the trial court, fixing the boundary line as contended for by appellee in that case, are decisive of the contentions of appellant in this case. We do not see that it would be of profit or advantage to add to the state- ment already made by us, or to go further into the contentions of the parties, but adopt the statement, with the additional statement made herein and the conclusions of Mr. Justice Higgins, as disposing of this case. Judge Higgins' opinion also disposes of the questions of evidence. In fact, in this case, appellant does not ask that the case be reversed because of error in the reception of evidence, but that it be reversed and rendered, because on the facts an instructed verdict should have been given.

For the reasons given by Mr. Justice Hig- gins, we affirm the judgment of the trial court.